UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TATYANA K.                                              Case No. 3:17-cv-01816-AC

                    Plaintiff,                          OPINION AND ORDER

          v.

NANCY A. BERRYHILL, in her capacity as
Acting Commissioner of Social Security,


                    Defendant.
_____

ACOSTA, Magistrate Judge:

*Introduction*

 Plaintiff Tatyana K.[1] seeks judicial review of the Commissioner of Social Security's final

decision denying her application for a period of disability and disability insurance benefits ("DIB")

---

 [1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1  - OPINION AND ORDER

under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court affirms the ALJ's decision.

*Background*

Plaintiff was born in 1952, was 61 years old on the alleged onset of disability date, and was 64 years old on the date of the hearing. Plaintiff has a college degree and has worked as an economist. Plaintiff moved to the United States from Kazakhstan approximately twenty years ago and has past relevant work experience as a childcare specialist.

Plaintiff protectively filed her DIB application on February 13, 2014, alleging disability beginning February 13, 2014 as a result of insomnia; depression and anxiety; chronic pain in her right hip, right knee, and low back; hypertension; carpal tunnel; cataracts; and gastroesophageal reflux disease. The claim was denied initially on August 21, 2014, and again upon reconsideration on January 14, 2015. Plaintiff filed a written request for a hearing on March 16, 2015, which an Administrative Law Judge ("ALJ") held on September 12, 2016 in Portland, Oregon. Plaintiff appeared and testified at the hearing through a Russian language interpreter and waived her right to legal representation. Vocational Expert ("VE") Patricia B. Ayerza also appeared and testified. The ALJ issued an unfavorable decision, and the Appeals Council declined review. Plaintiff filed this appeal.

*Legal Standards*

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "'Substantial evidence is more than a mere scintilla but, less than a preponderance. It means such relevant evidence as a

PAGE 2 - OPINION AND ORDER

reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill,* 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### The ALJ's Decision

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found Plaintiff met the Social Security Act's insured status requirements through December 31, 2017. At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since February 13, 2014, the alleged onset date. At step two, the ALJ found Plaintiff is impaired by the single severe impairment of obesity which more than minimally affects her ability

to perform basic work activities. At step three, the ALJ found Plaintiff's obesity causes only transient and mild symptoms and limitations and does not meet or medically equal a listed impairment. The ALJ assessed Plaintiff with a Residual Functional Capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). Tr. 30. At step four, the ALJ found Plaintiff capable of performing her past relevant work as a childcare specialist. Accordingly, the ALJ concluded Plaintiff is not disabled.

*Discussion*

Plaintiff contends the ALJ committed the following errors: (1) the ALJ failed to find her insomnia severe at step two; (2) the ALJ improperly rejected her testimony; (3) the ALJ improperly rejected the opinion of the examining psychologist Donna C. Wicher, Ph.D.; (4) Plaintiff did not knowingly waive her right to representation; (5) the ALJ failed to order a physical consultative examination; and (6) the ALJ improperly rejected the lay testimony of her husband. The Commissioner contends the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner argues that even if ALJ erred, Plaintiff has not demonstrated harmful error.

I.    The ALJ Did Not Err at Step Two

At step two, a claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404. 1521(a), (b); *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.

1521(a), (b). Step two is a "*de minimus* screening device used to dispose of groundless claims."
*Webb*, 433 F.3d at 687.

Plaintiff argues that the ALJ erred in failing to find her insomnia severe at step two. Plaintiff

insists that the ALJ erred because the ALJ failed to account for her excessive daytime sleepiness.

Pl.'s Br. 7, ECF No. 17. However, as the ALJ correctly determined, the medical record does not

support Plaintiff's allegations of excessive daytime sleepiness. Tr. 344. As the ALJ noted, Plaintiff

does not experience excessive drowsiness while driving, nor does she nap during the day. Plaintiff

has an Epworth Score of zero.[2] As the ALJ correctly indicated, Plaintiff does not experience

conditions such as sleep paralysis, hypnagogic or hypnopompic hallucinations, or cataplexy. Tr. 26,

344. And, as the ALJ indicated, Plaintiff declined to undergo cognitive behavioral therapy treatment

recommended by her physician and declined further workup on the condition for years despite her

contrary allegations of ongoing insomnia. Tr. 26. The ALJ's findings are wholly supported by

substantial evidence. Because the record shows Plaintiff does not experience excessive daytime

sleepiness, the could reasonably conclude that Plaintiff's chronic insomnia caused no more than

minimal limitations in Plaintiff's ability to perform basic mental work activities, and therefore was

nonsevere. Tr. 26.

Moreover, as noted above, the ALJ found that Plaintiff's obesity was severe at step two, and

continued with the sequential evaluation through step four. Thus, the ALJ resolved step two in

Plaintiff's favor. Therefore, even assuming *arguengo* that the ALJ erred at step two, the error is

---

[2] The Epworth Sleepiness Scale (ESS) is a self-administered questionnaire used to determine
whether and to what level a respondent experiences excessive daytime sleepiness. Scores can range
from zero to 24, with zero indicating low normal daytime sleepiness, and 24 indicating severe
excessive daytime sleepiness. EPWORTHSLEEPINESSSCALE, www. epworthsleepinessscale.com/
about-the-ess/ (last visited on February 5, 2019).

harmless. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir, 2005); *see also Gray v. Comm'r Soc. Sec. Admin.*, 365 F. App'x 60, 61 (9th Cir. 2010) (rejecting argument that the ALJ erred at step two by determining certain impairments were nonsevere, because any alleged error was harmless since "the ALJ concluded that [claimant's] other medical problems were severe impairments"); *Mondragon v. Astrue*, 364 F. App'x 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments."). And, to the extent that Plaintiff contends the ALJ erred in failing to account for Plaintiff's insomnia in the RFC, the argument fails. Plaintiff has not identified any functional limitations caused by insomnia and supported by substantial evidence in the medical record that the ALJ was required to include in the RFC. Accordingly, the court concludes the ALJ's finding that Plaintiff's insomnia nonsevere is supported by substantial evidence and reasonable inferences drawn from the record; the ALJ's decision will not be disturbed.

II.     The ALJ Did Not Err in Discounting Plaintiff's Subjective Symptom Testimony

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptom testimony. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*, 674 F.3d at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*,

533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter*, 806 F.3d at 493. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.[3] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that she lives with her husband in a two-story house, and that she attended college and worked as an economist. Tr. 44. Plaintiff testified that after moving to the United States, she taught herself English, and can read, write, and speak some English, but prefers to use an interpreter. Tr. 45. Plaintiff stated that she currently works as a child care specialist for eight hours a week. Tr. 46. Plaintiff testified that she worked for 16 years as a child care specialist for children born to drug addicted parents. Tr. 47. Plaintiff stated that she can no longer perform that work because it was very difficult; the children all have special needs, and the work made her anxious and depressed, interfered with her sleep, and negatively impacted her health. Tr. 45-46, 54.

Plaintiff estimated that she can walk for ten minutes before needing rest, and can sit for 20 to 30 minutes. Tr. 48. Plaintiff described that she speaks to her daughter almost daily on the

---

[3] The court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility" and superseded SSR 96-7p. The ALJ's decision in this case issued November 3, 2016. SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." SSR-16-3p, *available at* 2017 WL 5180304, *13 n.27 (Oct. 25, 2017). Therefore, the court applies SSR 16-3p to the evaluation of Plaintiff's symptom testimony.

telephone, can drive independently, can do laundry, shops with her husband, but does not vacuum. Tr. 50. Plaintiff noted she loves to cook, but it is sometimes hard. Tr. 50.

In a May 26, 2014 Function Report, Plaintiff indicated that she has chronic insomnia; irritability; anxiety; has pain in her hip, knee, and shoulder; fatigue; high blood pressure; hot flashes; depression; poor vision; stomach problems; and numbness in her hands. Tr. 181, 186. Plaintiff described that in a typical day, she has difficulty waking because she sleeps poorly, then cooks, cleans the house a bit, buys groceries, watches television, then goes to bed. Tr. 182. Plaintiff reported no problems with personal care and that she is able to cook complete meals. Tr. 183. Plaintiff noted she is able to do laundry and household chores for only one hour each week. Tr. 184. Plaintiff provided that her impairments affect her ability lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, and use her hands. Tr. 186. Plaintiff noted that she has difficulty paying attention, does not handle stress well, and does not like changes in routine. Tr. 186-87. Plaintiff noted that a doctor prescribed a cane that she uses when her hip is bothering her. Tr. 187. Plaintiff reported that she is able to pay bills and handle her finances independently. Tr.185.

In the decision, the ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony: (1) she received routine, conservative treatment for her alleged symptoms and her alleged limitations are inconsistent with the medical record; (2) her activities of daily living are inconsistent with her alleged limitations: and (3) her presentation at the hearing was inconsistent with her alleged limitations. After careful review, the court concludes the ALJ's reasoning is specific, clear and convincing.

////

////

A.    *Conservative Treatment and Inconsistencies with Medical Record*

The ALJ also discounted Plaintiff's subjective symptoms testimony because she received conservative treatment for many of her alleged disabling conditions. A conservative course of treatment is a proper basis on which to reject a claimant's testimony of severe impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Warre v. Astrue*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling" under the Act.) The ALJ detailed numerous conditions for which Plaintiff has received conservative or little treatment. For example, the ALJ highlights Plaintiff's discomfort stemming from her gastro-esophageal reflux disease, which is treated with medication. Tr. 26. Although Plaintiff was diagnosed with hypertension, she has been prescribed medication, and as the ALJ accurately noted, there is no evidence in the record that Plaintiff has been limited by hypertension in any way. Tr. 26. The ALJ's findings are wholly supported by substantial evidence, and are a reasonable interpretation of the record. Thus, the ALJ appropriately discounted Plaintiff's testimony based on the limited, conservative treatment she has received.

The ALJ also discounted Plaintiff's subjective symptom testimony because her alleged limitations are not fully supported by objective medical evidence. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra*, 481 F.3d at 750-51; *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. Inconsistencies between a claimant's allegations and the medical record is a permissible reason to discount a claimant's testimony. *Batson*, 359 F.3d at 1197; *Tommasetti*, 533 F.3d at 1039 (ALJ may consider prior inconsistent statements concerning symptoms and other testimony when evaluating credibility); *see also Perez v. Astrue*, 247 F. App'x 931, 934

(9th Cir. 2007) (holding ALJ appropriately discounted claimant's testimony where claims of severe medication side effects were not supported by medical record).

As the ALJ detailed, the medical findings in the record do not corroborate several of Plaintiff's allegations. For example, despite Plaintiff's complaint of severe knee pain, an x-ray revealed mild osteoarthritis with a normal range of motion and no swelling. Tr. 26, 260. The ALJ discussed that Plaintiff was treated for intermittent flank pain, which resolved with medication. Tr. 26, 310-311. The ALJ also noted that Plaintiff has a history of bilateral macular degeneration with a lens implant. Tr. 26, 248. As the ALJ accurately discussed, contrary to Plaintiff's allegations of disabling visual problems, Plaintiff has had no documented visual disturbance since June 2014. Tr. 26, 310.

Finally, despite unresolved symptoms of insomnia, the ALJ highlighted that Plaintiff has declined further workup on her insomnia and that she declined to participate in a Cognitive Behavioral Therapy (CBT-1) program, citing financial burdens and that she feels she has "tried it before." Tr. 26, 247, 250. Furthermore, the record reflects that although Plaintiff received information regarding financial assistance, it does not reveal that she pursued low-cost alternatives. Tr. 250. The ALJ noted that Plaintiff has a prescription for sertraline to help manage her depression and a recommendation to receive counseling, but has failed to fill her prescription or participate in counseling which may ameliorate her alleged mental health limitations. Tr. 27, 32. The record reflects that Plaintiff expressed interest in yoga as a more natural option to insomnia and depression, but gave no indication that she pursued that option. Tr. 251. The ALJ's detailed findings are wholly supported by substantial evidence in the record.

Although Plaintiff insists on a different interpretation of the evidence, the court concludes that the ALJ made logical inferences from the record to support his conclusions. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See e.g., Molina*, 674 F.3d at 1111(noting ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). In short, the ALJ reasonably concluded that the objective medical evidence is inconsistent with the degree of Plaintiff's subjective symptoms and appropriately discounted her credibility on this basis.

B.     *ADLs Are Inconsistent with Alleged Limitations*

The ALJ discounted Plaintiff's credibility because her alleged impairments have not interfered with her ability to perform most activities of daily living. Where a claimant is able to perform everyday activities indicating capacities that are transferrable to a work setting, an ALJ may discredit a claimant on that basis. *Molina*, 674 F.3d at 1113. And, an ALJ may discredit a claimant who may have some difficulty functioning to the extent that those activities contradict a claim of total disability. *Id.* As the ALJ detailed, Plaintiff has no limitations with personal care, spends one to two hours each day preparing full meals, performs household chores, including cleaning and laundry, drives independently, shops, works part-time, and attends appointments independently. Tr. 27. The ALJ also noted that Plaintiff is able to pay bills, handle finances, use a checkbook, talks on telephone daily with her daughter, and watches television. Tr. 27. The ALJ's findings are wholly supported by substantial evidence in the record, and the ALJ could reasonably conclude that Plaintiff's allegations are inconsistent with her allegations of total disability, and that she engages in activities that are transferrable to work setting.

The ALJ's findings are supported by substantial evidence in the record. The ALJ identified specific evidence in the record that undermines Plaintiff's claims that her impairments were so great that she was unable to work. Based on the wide variety of activities, their duration, and their frequency, the ALJ reasonably could find that Plaintiff's activities of daily living undermine her allegations of totally disabling limitations. *See Rossiter v. Berryhill*, Case No. 1:17-cv-00432-SB, 2018 WL 1041172, at *8 (D. Or. Feb. 2, 2018) (finding ALJ appropriately discounted claimant's testimony because it was inconsistent with her reported daily activities). The court concludes that this rationale combined with the conservative treatment and inconsistencies with the medical record detailed above, amount to specific, clear and convincing support for rejecting Plaintiff's subjective symptom testimony.

C.    *Presentation at Hearing*

Finally, Plaintiff contends the ALJ erred in discrediting her testimony based on the ALJ's personal observations of her at the hearing. An ALJ's personal observations "may not form the sole basis for discrediting a claimant's testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). However, the "inclusion of the ALJ's personal observations does not render the decision improper." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). The ALJ's personal observations are valid when the claimant manifests symptoms inconsistent with the medical evidence of his testimony. *Id.*; *see Morgan*, 169 F.3d at 600 (finding conflict between personal observations of ALJ and claimant's testimony provided a specific and substantial reason for discounting credibility).

Here, the ALJ noted discrepancies between Plaintiff's complaints and her ability to "sit the entire hearing . . . walk in and out on her own [and open] the rather heavy hearing door." Tr. 31.

Based on the court's review of the record as a whole, the court determines the ALJ reasonably could find that Plaintiff's behavior was inconsistent with her allegations that she is unable to sit for more than 20 to 30 minutes, or walk for more than 10 minutes and occasionally requires a cane. Tr. 31, 48. Therefore, the court concludes this rationale lends further support for the ALJ's specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony discussed above. In short, the ALJ has provided specific, clear and convincing reasons backed by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony.

III.   The ALJ Properly Evaluated the Opinion of the Examining Psychologist Donna C. Wicher.

   *A.   Standards for Examining Medical Evidence*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Garrison*, 759 F.3d at 1012; *Ghanim*, 763 F.3d at 1161. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Tommasetti*, 533 F.3d at 1041 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Specific and legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or internal inconsistency. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan,* 169 F.3d at 601-03.

    *B.    Analysis*

Plaintiff argues the ALJ failed to provide sufficient reasons for discounting the opinion of examining psychologist, Donna C. Wicher, Ph.D., P.C. On August 14, 2014, Dr. Wicher conducted a Comprehensive Psychodiagnostic Evaluation to determine whether Plaintiff has any mental, cognitive, or emotional difficulties that would interfere with her ability to sustain full-time employment. Tr. 457. Dr. Wicher reviewed Plaintiff's medical records, reviewed a Third Party Function Report completed by Plaintiff's husband, and conducted a clinical interview and mental status examination of Plaintiff. Tr. 457. The examination was conducted with the assistance of a Russian language interpreter. Dr. Wicher indicated that Plaintiff was oriented to person, place and time, had no deficits in memory or concentration, and performed five digits forward and three digits backward. Tr. 459. Dr. Wicher noted that plaintiff was able to perform complex mathematical calculations and demonstrated satisfactory common sense judgment, abstraction, with intact thought processes and judgment. Dr. Wicher noted Plaintiff's affect was appropriate and her mood was depressed and occasionally tearful. Tr. 459.

Dr. Wicher diagnosed Plaintiff with Major Depressive Disorder, single episode, mild; and Generalized Anxiety Disorder. Tr. 460. Dr. Wicher noted that Plaintiff reported chronic pain, hypertension, and gastroesophogal reflux disease. Tr.460. In the narrative portion of the evaluation, Dr. Wicher indicated that Plaintiff reported symptoms of depression and anxiety ongoing for five to ten years, and that her current symptoms support those diagnoses. Dr. Wicher also noted that

Plaintiff had been prescribed medications for her depression and anxiety, but that Plaintiff was not taking them. Tr. 460. Dr. Wicher indicated that Plaintiff should be encouraged to try the antidepressant medications and supportive counseling. Tr. 460.

Additionally, Dr. Wicher opined that Plaintiff described mild deficits in her activities of daily living, moderate deficits in social functioning due to some difficulty controlling her anger, and irritability. And, Dr. Wicher opined that although Plaintiff complained of problems with concentration, "[h]er overall deficits in concentration, persistence, and pace are estimated to be mild to moderate." Tr. 460. Dr. Wicher also noted that Plaintiff has no documented episodes of psychological decompensation. Tr. 460. Dr. Wicher summarized that:

> [Plaintiff's] mild deficits in her ability to perform activities of daily living, moderate deficits in social functioning, and mild to moderate deficits in concentration, persistence, and pace represent the primary psychological barriers to returning her to full-time, sustained employment. She could potentially benefit from antidepressant medication and should be encouraged to consider filling the prescription she has for Sertraline, and she might also benefit from supportive counseling.

Tr.460.

Dr. Wicher's opinion was contradicted by those of agency physicians Dorothy Anderson, Ph.D. and Joshua J. Boyd, Psy.D., who opined that Plaintiff has mild restriction in her activities of daily living, mild difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, and pace. Tr. 63, 74. The ALJ therefore was required to provide specific and legitimate reasons for discounting Dr. Wicher's opinion.

In the decision, the ALJ accurately summarized Dr. Wicher's opinion and gave Dr. Wicher's opinion "limited weight" for three reasons: (1) Plaintiff was not taking prescription medication for her depression and anxiety at the time of her examination; (2) the opinion is inconsistent with other

medical records and her activities; and (3) even if Plaintiff was limited to simple tasks, she would be able to perform many jobs in the national economy. Tr. 32. The court concludes the ALJ has provided specific and legitimate reasons for discounting Dr. Wicher's opinion.

The ALJ discounted Dr. Wicher's opinion because "it relies on [Plaintiff] not taking any prescriptions for mental [health] issues." Tr. 32. During her evaluation, Plaintiff reported to Dr. Wicher that she was taking medications only for her insomnia and not her anxiety or depression. Tr. 457, 460. In her briefing, Plaintiff contends that the ALJ erred in discounting Dr. Wicher's opinion on this basis because she reported to Dr. Wicher that she was taking trazodone, and previously has been prescribed sertraline and celexa, and that they have not been effective. The Commissioner responds the Plaintiff's medical records reveal that it is predominantly her insomnia that has not responded to medications. According to the Commissioner, because her mental health issues can be controlled with medications, they are not disabling.

The record reflects that in January 2014, Plaintiff reported to her physician that she took celexa for several months, and that it improved her anxiety, but worsened her insomnia. Tr. 262. At that time, Plaintiff indicated she was willing to undertake another trial of celexa. Tr. 263. The record also demonstrates that Plaintiff has been prescribed sertaline and paroxetine, but has not filled or is not consistently taking those prescriptions. Tr. 330, 352, 476.

A claimant's failure to follow a prescribed course of treatment can provide a specific and legitimate reason for discounting a physician's opinion. *Orn*, 495 F.3d at 638 ("if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated"); *see Chase v. Comm'r Soc. Sec. Admin.*, Case No. 3:15-cv-00950-MA, 2016 WL

1454005, *4 (D. Or. Apr. 13, 2016) (finding claimant's noncompliance was a specific and legitimate basis to discount physician's opinion); *Bartlett v. Colvin*, No. 1:14-cv-00142-SB, 2015 WL 2412457, *8 (D. Or. May 21, 2015) (concluding that a claimant's failure to follow a course of treatment undermines the intensity and persistence of the limitations described by the treating physician and constitutes a specific and legitimate reason for discounting opinion); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"). Impairments that are effectively controlled with medication are not disabling. *Warre*, 439 F.3d at 1006.

Here, the ALJ accurately notes that Plaintiff is not taking antidepressant medication despite it being prescribed for her. As noted above, the ALJ's findings in this respect are supported by substantial evidence. Additionally, Dr. Wicher noted that Plaintiff should be encouraged to try antidepressant medication and counseling. Tr. 460. Nevertheless, Plaintiff argues that the ALJ should not have discounted Dr. Wicher's opinion based on her noncompliance because the medications were not successful. Plaintiff's argument is not well taken.

Based on the record, the ALJ may reasonably have believed that Plaintiff's functional capacity would have improved if Plaintiff was compliant with this aspect of her healthcare treatment. Therefore, the ALJ could rationally determine that Dr. Wicher's assessment was not a completely accurate reflection of Plaintiff's abilities and functioning. Although Plaintiff suggests an alternative interpretation of the evidence, the ALJ's interpretation is reasonable and will not be disturbed. Thus, Plaintiff's noncompliance is a specific and legitimate reason for discounting Dr. Wicher's opinion. *Chase,* 2016 WL 1454005, at *4; *Bartlett,* 2015 WL 2412457 at * 8; *see also Passi v. Colvin*, No. CV 14-08456-JEM, 2015 WL 4163100, *5 (C.D. Cal. July 8, 2015) (finding noncompliance with

medications was specific and legitimate reason for discounting physician's opinion); *Owen v. Astrue*, 551 F.3d 792, 799-800 (8th Cir, 2008) (finding claimant's noncompliance with attending appointments, diet and exercise undermined treating physician's opinion).

The ALJ's second rationale also provides specific and legitimate support. The ALJ discounted Dr. Wicher's opinion because it is inconsistent with other medical record evidence indicating that Plaintiff functions at a high level. Tr. 32. Inconsistency between a physician's opinion and medical records is a specific, legitimate reason for discounting the physician's opinion. *Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 601; *Batson*, 359 F.3d at 1195 (holidng ALJ may discredit medical opinions that are unsupported by record as a whole or by objective medical findings). In doing so, the ALJ cited to Plaintiff's medical records from four medical appointments between March and December 2015. Tr. 473, 478, 483, 488. To be sure, the records are inconsistent with the mild-to-moderate limitations in concentration, persistence and pace identified by Dr. Wicher as a barrier to full-time employment. For example, in the March 20, 2015 treatment note, Plaintiff's primary complaint was hot flashes; in June 2015, her chief complaints were bursitis, hot flashes, and hypertension; in September 2015, her chief complaint was hypertension; and in December 2015, her chief complaint was insomnia. Tr. 474, 479, 484, 490. And, although her March 2015 treatment records indicated generalized anxiety disorder on her "problem list," generalized anxiety disorder was not in her "problem list" at her June 2015 office visit or discussed at any visit from March through December 2015. *Compare* Tr. 476 *with* Tr. 482. The ALJ's findings are supported by substantial evidence and reasonable inferences drawn from the record as whole. Based on this evidence, the ALJ reasonably could conclude that Dr. Wicher's opinion was inconsistent with other

medical evidence. Thus, the ALJ has provided a specific and legitimate reason for discounting Dr. Wicher's opinion. *Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 601.

The ALJ also discussed that Plaintiff's demonstrated ability to "function at a high level" is inconsistent with Dr. Wicher's opinion that Plaintiff's mild deficits in her activities of daily living, moderate deficits in social functioning, and mild to moderate limitations in concentration, persistence, and pace are a barrier to full-time employment. Tr. 32. Inconsistency between a provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim,* 763 F.3d at 1162. Here, the ALJ elaborated that Plaintiff has a high school diploma, a college degree, and has worked in the United States for many years in a complex, semiskilled job. Tr. 32-33. The ALJ discussed that Plaintiff remains able to prepare full meals for up to two hours each day, pay bills and handle banking accounts; and that she shops, drives, and attends appointments independently. Tr. 27, 32. The ALJ findings are backed by substantial evidence and reasonable inferences drawn from the record as a whole. Thus, the ALJ appropriately discounted Dr. Wicher's opinion because it was inconsistent with Plaintiff's ability to sustain certain activities, and readily provides a specific and legitimate basis to discount the physician's opinion. *Ghanim*, 763 F.3d at 1162.

In the third rationale, the ALJ found that if Plaintiff was limited to simple, routine tasks, she could perform numerous jobs in the national economy. Plaintiff complains that the ALJ cannot discount a physician's opinion based on a vocational assessment. The Commissioner does not address this rationale.

Viewing the ALJ's reasoning in light of the evidence as a whole, the ALJ appears to suggest that even if all of Dr. Wicher's limitations are incorporated into the RFC, the limitations described

are not disabling. The court agrees with the ALJ that the limitations described by Dr. Wicher generally are not considered disabling in the context of social security cases. Yet, the ALJ's discussion of vocational information while analyzing Dr. Wicher's opinion provides little insight into the ALJ's rationale and generally is not how disability decisions are structured. However, any error in relying on this additional rationale is harmless. *See Molina*, 674 F.3d at 1115 (explaining that error is harmless if it is inconsequential to ultimate nondisability determination).

The ALJ has properly discounted Dr. Wicher's opinion based on specific and legitimate reasons based on her noncompliance, the inconsistencies between the medical record and her activities, and the assessed limitations. *See Ghanim*, 763 F.3d at 1161-62 (inconsistency with treatment record and claimant's activities was specific and legitimate basis for rejecting opinion). Therefore, even if the ALJ erred in discussing vocational information, the error is harmless. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (holding error harmless if it is "inconsequential to the ultimate nondisability determination" or if "the agency's path may be reasonably discerned, even if the agency explains its decision with less than ideal clarity"); *Bailey v. Colvin*, 659 F. App'x 413, 415 (9th Cir. 2016) (holding that the ALJ provided two specific and legitimate reasons for rejecting a treating physician's opinions and, therefore, concluding that "[a]ny error in the ALJ's additional reasons for rejecting [the treating physician's] opinions was harmless" (citation omitted)).

Accordingly, the court concludes that the ALJ provided a specific and legitimate basis supported by substantial evidence for discounting Dr. Wicher's opinion; the ALJ did not err.

////

////

IV.  Plaintiff Knowingly Waived Her Right to Representation

Plaintiff contends she did not knowingly waive her right to representation. Plaintiff argues that because the materials were not sent in Russian, she may not have fully understood her right to obtain representation. The court disagrees.

The Social Security Commissioner is required to notify claimants in writing of their "options for obtaining attorneys [and] of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c). The Ninth Circuit requires the Commissioner to make an extra effort to ensure a claimant fully understands contingency arrangements in cases of financial hardship. *Roberts v. Comm'r Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) ( *citing Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (holding disclosure mandated by § 406 is required, in addition to the "enhanced disclosure requirements set forth in *Thompson*")). However, a claimant may waive her right to counsel if she received information enabling her to make an informed decision. *Vasquez v. Astrue*, Case No. EDCV 11-883-OP, 2012 WL 590019, at *2 (C.D. Cal. Feb. 21, 2012) (finding claimant knowingly waived right to counsel).

The record shows Plaintiff was notified of her right to legal counsel in writing no fewer than five times. Tr. 99, 102, 104, 108-115. Plaintiff did not respond to a September 6, 2016 call from the ALJ's legal assistant confirming her wish to proceed without representation. Tr.123. At the hearing, the ALJ asked Plaintiff, in the presence of a Russian language interpreter, whether she would like to proceed without legal counsel to which she answered affirmatively and memorialized her informed decision in writing. Tr. 41-42, 124. Moreover, the ALJ offered Plaintiff more time to obtain an attorney at the hearing with the interpreter. Tr. 42. Plaintiff declined. Tr. 43. Plaintiff clearly received information sufficient to enable her to make an informed decision on her right to

counsel. The ALJ's finding Plaintiff knowingly waived her right to representation is readily supported by substantial evidence, is a reasonable interpretation of the record, and will not be disturbed. *Vasquez*, 2012 WL 590019, at *2.

V.      The ALJ Was Not Required to Develop the Record

The ALJ did not err in failing to order a physical consultative examination. The Agency may order a consultative examination if there is difficulty acquiring evidence from treating sources. 20 C.F.R. § 404.1512(e). Furthermore, an ALJ's duty to fully develop the record is heightened where a claimant is not represented by counsel; however, this duty is triggered only where evidence is ambiguous or where the record is inadequate to allow for the proper evaluation of evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (finding ALJ had no duty to request more information from claimant's treating physicians).

In this case, the ALJ determined that the evidence in the record was insufficient with respect to Plaintiff's mental impairments and ordered a consultative psychological examination. Unlike the evidence concerning Plaintiff's alleged mental impairments, the record concerning Plaintiff's alleged physical impairments contained significant treatment records. Thus, the court concludes that the ALJ reasonably could find that the medical record concerning Plaintiff's physical limitations was neither ambiguous or inadequate. Accordingly, the ALJ had no duty to develop the record and did not err in failing to order a physical consultative examination. *McLeod*, 640 F.3d at 885.

VI.     The ALJ Properly Evaluated the Testimony of Plaintiff's Husband

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Molina*, 674 F.3d at 1114; *Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

Plaintiff contends the ALJ improperly discounted the lay witness testimony of her husband. Plaintiff's husband, Vladimir K., submitted a Third Party Function Report. In that report, her husband indicated that Plaintiff has no energy; tires easily; has chronic insomnia; anxiety; pain in her hip, knee, and tail bone; fluctuating blood pressure; poor vision; and stomach problems. Tr. 189. Plaintiff's husband noted that Plaintiff's conditions limit her ability to lift, squat, bend, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, follow instructions, and use her hands. Tr. 194. Plaintiff's husband indicated that these conditions prevent Plaintiff from functioning at work. Tr. 189. Plaintiff's husband reported that Plaintiff's anxiety prevents her from sleeping, and that she suffers hot flashes and numbness in her hands. Tr. 190. Plaintiff's husband reported that in a typical day, Plaintiff prepares meals for 60-to-90 minutes, and performs household chores such as laundry, cooking, washing dishes, and organizing the house. Tr. 191. Plaintiff's husband indicated she is able to drive, shop for groceries, reads and watches television. Tr. 192. Plaintiff's husband noted that Plaintiff has difficulty concentrating and following written instructions, difficulty sleeping, and uses a cane when the pain in her hip is bothersome. Tr. 194-95.

In the decision, the ALJ accurately discussed the lay testimony, and provided germane reasons for partially discounting it. First, the ALJ found that Plaintiff's husband's allegations of Plaintiff's limitations were inconsistent with her abilities and activities. For example, the ALJ discussed that Plaintiff is able to cook, perform household chores, is independent with personal care, shops in stores, and works part-time. Tr. 33. The ALJ also detailed that Plaintiff's allegations of

vision problems are contradicted by other evidence in the record that she is able to read, watch television, shop, and drive a car. Tr. 33. As discussed at length above, the ALJ appropriately discounted Plaintiff's similar subjective complaints. Therefore, the ALJ has provided a germane reason for rejecting the comparable lay testimony. *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694.

Second, the ALJ found the lay testimony inconsistent with the medical evidence of record. Inconsistency with the medical record can be a germane reason for discounting lay testimony. *Bayliss*, 427 F.3d at 1218 (holding inconsistency with medical evidence is a germane reason to discount lay testimony). But, the ALJ may not discredit lay testimony because it is not corroborated by medical evidence. As the ALJ detailed, the "record as a whole does not show that conditions such a[s] poor vision, stomach pain, depression, anxiety, insomnia, pain, and fluctuating blood pressure affect her ability to work." Tr. 33. As the ALJ discussed above, Plaintiff's conditions, such as hypertension and gastroesophageal reflux disease, have been well-controlled with medication and do not present functional limitations. Tr. 33. Thus, the ALJ provided a second germane reason for rejecting the lay testimony. *Molina*, 674 F.3d at 1114; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (finding ALJ properly discounted lay testimony that conflicted with medical evidence). The ALJ did not err.

////

////

////

////

////

*Conclusion*

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this ___ day of February, 2019.

JOHN V. ACOSTA
United States Magistrate Judge